**SPANKEY'S AUTO SALES, INC., Petitioner,**

v.

**BUREAU OF PROFESSIONAL AND OCCUPATIONAL AFFAIRS, Respondent.**

**Spankey's Auto Sales, Inc., Petitioner,**

v.

**State Board of Vehicle Manufacturers, Dealers and Salespersons, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 9, 1999.

Decided April 12, 2001.

Lawrence R. Wieder, Harrisburg, for petitioner.

Thomas A. Blackburn, Harrisburg, for respondent.

Before DOYLE, President Judge, COLINS, Judge, JIULIANTE, Senior Judge.

DOYLE, President Judge.

Spankey's Auto Sales, Inc. (Spankey's) appeals from an order of the State Board of Vehicle Manufacturers, Dealers and Salespersons[1] (Board) affirming the order of a hearing examiner imposing a civil penalty of $1,000 for the operation of an unlicensed branch lot, to wit, displaying vehicles at a local mall. We reverse.

Spankey's is a used car dealer with its main lot in Mechanicsburg, Pennsylvania. On July 23, 1998, Spankey's was issued a citation by Dennis Ertter (Ertter), an agent of the Board, alleging that Spankey's operated an unlicensed branch lot in violation of the Board of Vehicles Act (Act).[2]

The underlying facts are as follows. Spankey's entered into three agreements in 1998 with Crown American Properties to lease a 12′ × 12′ display area in the middle of the Capital City Mall in Camp Hill, Pennsylvania. The first lease agreement ran from January 9, 1998 to February 9, 1998. The second lease ran from February 9, 1998 to March 9, 1998. The third lease was for seven months and ran from March 10, 1998 to October 31, 1998. Spankey's, however, terminated the third lease on July 24, 1998, after receiving the citation from Ertter.

Spankey's used the leased area to display one vehicle from its inventory and would routinely change the display vehicle on a weekly basis. Also at the display area were business cards of sales representatives, brochures and fliers advertising the services which Spankey's had to offer, and a kiosk which was connected to Spankey's internet site. Through the use of the kiosk, one could view the vehicles that were for sale at Spankey's' various locations, including the vehicle on display at the mall.

The undisputed testimony established that there were no chairs, desks or tables at the display area; nor were there any buyer's orders, PennDot title/registration forms, telephones, or filing cabinets. The testimony established that a Spankey's sales representative would periodically visit the display area to place business cards at the location. While there, the sales representative would answer any questions

**1.** On June 9, 1999, Spankey's filed a first petition for review, docketed at 1440 C.D. 1999, because its attorney received the hearing examiner's decision after the time period in which to file an appeal with the Board. After the petition for review was filed, the Board permitted Spankey's to apply for review *nunc pro tunc*. The Board then heard Spankey's appeal and issued an order adopting the hearing examiner's decision. Spankey's then filed a second petition for review, docketed at 2053 C.D. 1999. By order dated August 25, 1999, this Court consolidated the two petitions for review for purposes of argument. Because the second petition for review is the proper one before this Court, we will quash the petition for review docketed at 1440 C.D. 1999.

**2.** Act of December 22, 1983, P.L. 306, *as amended*, 63 P.S. §§ 818.1–818.37.

and help the shoppers utilize the kiosk. According to Donald Leggett, Spankey's principal, the sales representatives were not permitted to engage in the sale of any vehicle while at the display area.

In April of 1998, Spankey's became the subject of an investigation by Ertter. Ertter visited the display area at the mall on approximately 13 occasions. During the course of the investigation, Ertter took photographs of the various vehicles on display, and these photographs were introduced as evidence at the hearing. In addition, on one visit, a sales representative was at the location. Ertter testified that the sales representative asked him if he wanted to test drive the display vehicle and told him that a test drive could be arranged in one day. Furthermore, the sales representative gave Ertter a business card with the Manufacturer's Suggested Retail Price of the display vehicle written on the back of the card. Ertter did not participate in the test drive and did not utilize the kiosk during the investigation.

In July of 1998, Ertter issued a citation to Spankey's because he concluded that, by displaying vehicles at the mall, Spankey's was unlawfully operating an unlicensed branch lot in violation of the Act. Spankey's thereafter requested a hearing, which was held on April 13, 1999. The hearing examiner sustained the citation by order dated May 10, 1999. The Board, by order dated July 13, 1999, adopted the hearing examiner's adjudication as its own and sustained the citation. This appeal followed.

On appeal,[3] Spankey's argues that the Board erred in finding that it operated an

unlicensed branch lot in violation of the Act. Section 5 of the Act provides, in pertinent part:

(a) **License required.—**

(1) To promote the public safety and welfare, it shall be unlawful for any person to engage in the business as a salesperson, dealer, **branch lot,** ... within this Commonwealth unless the person has secured a license as required under this act.

63 P.S. § 818.5(a)(1) (emphasis added). Section 2 of the Act defines "branch lot" as "[a]n **office** and **lot** maintained in addition to the main office and lot of a licensed vehicle dealer used for the display or sale of vehicles." 63 P.S. § 818.2 (definitions) (emphasis added).

Spankey's contends that the 12′ × 12′ display area in the mall cannot be interpreted as an "office" and "lot" for purposes of the Act. Spankey's argues that, since there were no chairs, tables, and filing cabinets, and, since there were no salespersons authorized to execute a sale, one could not assert that Spankey's was operating a branch lot. Instead, Spankey's suggests that it was merely employing an advertising technique similar to renting a billboard or to having an employee drive a vehicle with a sign advertising its services. As such, Spankey's contends that the citation should be dismissed because it was not operating a branch lot.

The Board, on the other hand, contends that Spankey's was cited for engaging in the business of a branch lot, and as such, the physical quality of the location is not controlling. The only issue, argues the Board, is whether Spankey's was conducting business as if it were a branch lot. To

---

**3.** This Court's review of a civil penalty imposed by the State Board of Vehicle Manufacturers, Dealers and Salespersons is limited to determining whether the Board violated the licensee's constitutional rights, committed an error of law, or based its conclusion on a material finding of fact that was not supported by substantial evidence. *Northern Associates, Inc. v. State Board of Vehicle Manufacturers, Dealers and Salespersons,* 725 A.2d 857 (Pa.Cmwlth.1999).

support its argument, the Board points to the statutory definition of branch lot and contends that, since Spankey's was displaying vehicles at the mall location, it was engaging in the *business* of a branch lot. Furthermore, the Board suggests that the terms "office" and "lot" in the definition of branch lot are relevant only in considering whether a dealer qualifies for a license. They have no bearing on whether a dealer is engaging in the *business* of a branch lot.

We agree with Spankey's that its display of a vehicle at the Capital City Mall was merely an advertising technique which is customarily utilized in thousands of malls throughout the country. The display area in the mall did not, by any stretch of the imagination, constitute an "office" and a "lot" as is required under the Act. It is undisputed that there were no telephones, chairs, tables, filing cabinets or forms used for the sale of vehicles. The hearing examiner, affirmed by the board, specifically found that "[t]he vehicle, the computer and salespersons' business cards were the only separate items of personalty of Respondent at the mall location." (Hearing examiner's decision, finding of fact No. 12.) Because there was neither an office nor a lot at the display area in question, that area simply did not constitute a branch lot as that term is defined in the Act.

Given our reasoning herein, the fact that the space Spankey's leased in the middle of the Capital City Mall was used for the display of vehicles is irrelevant. In our estimation, the intent of the General Assembly in requiring licenses for branch lots is to prohibit already licensed dealers from opening additional lots without the proper additional licensure. Since no such prohibited activity occurred here, we reject the Board's argument that Spankey's was engaged in the *business* of a branch lot by displaying a vehicle at the local mall.

Accordingly, we reverse the decision of the Board and dismiss the citation issued to Spankey's.[4]

### *ORDER*

NOW, April 12, 2001, with regard to the appeal of Spankey's docketed at No. 1440 C.D. 1999, that appeal is hereby quashed (see footnote 1 of opinion). With regard to the appeal docketed at No. 2053 C.D. 1999, the order of the State Board of Vehicle Manufacturers, Dealers and Salespersons is hereby reversed, and the citation issued to Spankey's Auto Sales, Inc. is dismissed.

---

4. Due to the disposition of this case, we need not address Spankey's argument that it fit within the definition of a Vehicle Show, Off Premise Sale and Exhibition pursuant to Section 32 of the Act, 63 P.S. § 818.32. This Section was added to the Act by the Act of July 3, 1987, P.L. 192.